OSCAR HOOKER v. L. C. LATHAM, et al.

*Action of Claim and Delivery of Title Deeds—Replevin—Trover and Conversion.*

Where there is a dispute about the delivery of a title deed involving a determination of the title to the land conveyed by it, neither replevin nor the provisional remedy of claim and delivery will lie. Nor, in such case, will trover lie for the conversion of the deed.

CIVIL ACTION, of claim and delivery, for the recovery of a certain mortgage deed (and two notes secured thereby)

executed by Henry Edmonds to I. A. Sugg, in July, 1877, and of a certain deed executed by I. A. Sugg to William Whitehead, in the year 1888, alleged to be unlawfully detained from the plaintiff, who was a purchaser of the land described in said deeds at execution sale against Edmonds, tried before *McIver, J.*, and a jury, at December Term, 1895, of PITT Superior Court. The defendants each for himself filed a separate answer, denying the ownership of the plaintiff in the mortgage deed and the existence of any deed from Sugg to Whitehead.

At the trial the following issues to the jury were tendered by the plaintiff, and accepted by defendants:

1. Is the plaintiff the owner and entitled to the possession of the papers described in the complaint?

2. Do the defendants wrongfully withhold the same?

3. What damage has the plaintiff sustained?

To the first and second issues the jury responded, "Yes"; and to the third issue, "Two dollars."

On the trial the plaintiff offered in evidence the record books of the Register's office, purporting to contain the record of a mortgage deed executed by Henry Edmonds and wife to I. A. Sugg, February 12th, 1877, securing certain notes, of same dates, for $257 each.

Objected to by defendants; objection overruled; defendants excepted.

Record read and admitted in evidence by the court.

John Flanagan, a witness for the plaintiff, was then introduced, and he was asked by the plaintiff, "What do you know about a deed from I. A. Sugg to William White-head?"

Objected to by defendants; objection overruled, and defendants excepted.

Witness testified that Col. Sugg had placed some papers, similar to the ones described, in his hands as a collateral

security, but that he never read them and could not speak of their contents ; to the best of his recollection, he turned the papers over to Dr. O'Hagan.

I. A. Sugg was then called as a witness for the plaintiff, and (under objections by the defendant, which were overruled and excepted to by the defendant) he testified that he was the mortgagee in a mortgage executed by Henry Edmonds and wife February 12, 1877, and that as such mortgagee he had a sale of the mortgaged premises, in 1888, at which sale William Whitehead became the highest bidder ; that he signed a paper purporting to be a deed to Whitehead ; that he (Sugg) to whom the notes were payable had an interest of $175, with interest on that amount, and that the balance belonged to Whitehead. That he would not deliver the deed to Whitehead, because he did not pay Sugg the amount of his (Sugg's) interest in the debt, although he promised to do so. That on one occasion he was going to South Carolina, and he left the notes, mortgage and deed with John Flanagan, to be delivered to Whitehead if he paid the $175, with interest. That subsequently the papers were in the hands of Dr. O'Hagan, who handed them to Sugg. That afterwards Col. Skinner paid him a sum of money which he accepted, as a satisfactory payment of his interest in the notes secured in the mortgage, and delivered the mortgage, notes and deed either to Skinner or Whitehead, he could not say which, as both were present and both handled the papers, but his impression was that he delivered them to Skinner ; it was for Whitehead's benefit.

In answer to question by plaintiff, " In what capacity was Col. Skinner acting in relation to Whitehead ? " the witness answered (under objection and exception by defendant)—that it was his impression that he was paying the money for Whitehead and acting for him. He also testi-

fied that he endorsed the notes in blank at the time he handed them to Skinner (if he did hand them to him), or before—he could not say which.

Dr. C. J. O'Hagan was called and testified as a witness for the plaintiff. He testified that he had the mortgage, notes and deed for some time, until he got tired of keeping them; that he got them from John Flanagan and returned them to I. A. Sugg, but that he did not hold it for anybody's debt. It was for accommodation.

Plaintiff offered in evidence a deed purporting to be a deed from the sheriff of Pitt county to plaintiff, dated January 5, 1891, which purported to convey the interest of William Whitehead in the Henry Edmonds house and lot in the town of Greenville. Defendants objected. Objection overruled and defendants excepted.

Plaintiff then offered in evidence judgment docket of Pitt superior court, and certain executions against William Whitehead issued on said judgments. (Objection by defendants. Objection overruled and defendants except.) The return on the executions showed that the land was bid off by one B. F. Manning, but that the deed was made to the plaintiff, the sheriff testifying (under objections and exception by the defendants) that he had verbal instructions from Manning to make the deed to Hooker, as he had assigned his bid to Hooker.

Plaintiff rested, and defendant Skinner testified, in his own behalf, that he purchased the notes and mortgage in controversy from I. A. Sugg, and that Sugg endorsed the notes in blank, and that he (Skinner) wrote over this blank the endorsement, with Sugg's full knowledge and approval: " Pay to Harry Skinner," and that Sugg delivered the notes, mortgage and the so-called deed to him. That he made the purchase for himself, and not for Whitehead or any one else, and that all of said papers had been in his

safe and in his possession ever since; and that he knew the so-called deed had never been delivered to Whitehead, or to any one for his benefit, and that after the purchase by and delivery to him of the old notes and mortgage, that Henry Edmonds executed to him a new note and mortgage for $600.

T. J. Jarvis, one of the defendants, then testified on behalf of the defendants that some time in the spring of 1891 mortgagee Sugg came to his office in Greenville with a package of papers, which Sugg offered to sell him, and upon inspection it turned out that the papers were the note and mortgage and the so-called deed involved in this controversy; that he then asked Sugg if the so-called deed had ever been delivered to Whitehead, and Sugg replied that it had not. Witness declined to purchase. Witness further testified that some time subsequent to this Sugg told him he had sold and delivered the papers to Harry Skinner.

C. M. Bernard was then called by the plaintiff and testified (under objection and exception by the defendants) that defendant Whitehead had told him that Henry Edmonds had paid him rent for the house and lot after the sale and since this suit was instituted.

(Defendants Jarvis and Skinner objected to this testimony, on the ground that it was the declaration of Whitehead and not evidence against them, and that it was his declaration as to transactions with a dead man, it being in evidence that Henry Edmonds died shortly after the execution of the new mortgage to Skinner. Objection overruled; exception by defendants, Jarvis and Skinner.)

The plaintiff then offered in evidence the record of a mortgage executed by Henry Edmonds and wife to Harry Skinner on the same day that these proceedings were instituted.

HOOKER *v.* LATHAM.

The defendants request the court to charge the jury:

"1. That there is no evidence that the plaintiff was the owner of the papers in controversy at the time he brought his action, and the jury must answer the first issue, 'No.'

"2. Ownership of a chattel is one thing, and an equitable interest in it is another. To maintain an action of claim and delivery the plaintiff must be the owner of the chattel at the time of bringing his action, or he must have been ousted of the actual possession under circumstances which entitle him to recover the possession. In this case the plaintiff alleges that he is the owner of the property in controversy, and he must prove it to entitle him to recover. There is no testimony showing or tending to show that the plaintiff ever had any title to either of the papers described in the complaint, or that he ever was in possession of them, or either of them, and you must answer the first issue, 'No.'

"3. If the plaintiff has any equitable interest in the papers there is a forum where he may assert that interest, but not in an action of this kind. There is no testimony showing that the papers in controversy were executed to the plaintiff, or that they were ever assigned to him, or that he had any possession of them, and you must answer the first issue, 'No.'

"4. While valuable papers are the subject of claim and delivery, it must be such papers to which the plaintiff had the legal ownership at the time of bringing his action, and as the plaintiff in this action has failed to show that he ever had any title to either of the papers he cannot recover, and you must answer the first issue, 'No.'"

It was admitted by both sides that the answer to the first issue depended on whether the deed described in the complaint had been delivered to the defendant, Whitehead; that if the jury found as a fact that the said deed

HOOKER v. LATHAM.

had been delivered they should answer the first issue, "Yes," but if they found it had not been delivered they should answer, "No." The defendants' counsel, however, contend that there were grounds set out in defendants' prayer for special instructions upon which the plaintiff was not entitled to recover.

The court refused to charge the jury as requested by the defendants, but did charge the jury that the controversy turned upon the question as to whether the paper-writing, purporting to be a deed from Sugg, mortgagee, to White-head, had ever been delivered or not. If the jury should find from the evidence that Sugg, the mortgagee, ever delivered the deed to Whitehead, or to any one for him, that they must answer the first issue, "Yes"; otherwise, "No." The burden of proof is on the plaintiff and he must satisfy you by a preponderance of testimony that he was the owner of the papers at the time the suit was commenced, and if he has failed to do so you must answer the first issue, "No."

Defendants excepted to the charge, as given, and to the refusal of the judge to charge as requested.

Verdict for the plaintiff. Defendants moved for a new trial and assigned grounds therefor:

"1st. Admission of incompetent testimony introduced by plaintiff.

"2nd. Refusal to charge as requested by defendants.

"3rd. Exception to charge as given."

Motion overruled. Defendants excepted and appealed to Supreme Court.

*Messrs. Thos. J. Jarvis* and *Shepherd & Busbee*, for defendants (appellants).

No counsel, *contra*.

AVERY, J.: The action is brought to recover possession of a mortgage deed executed by one Edmonds to Isaac A.

Sugg, together with two notes secured by it, and also an absolute deed from Sugg to William Whitehead convey-ing the same land.    The provisional remedy of claim and delivery was also resorted to, as ancillary to the first cause of action, thereby giving to it the characteristics of the old common law action of replevin, which could be maintained only for the recovery of specific personal chattels wrong-fully in the possession of another, as appears from the defi-nition given in the books.    20 Am. & Eng. Enc., p. 1041 ; 7 Lawson R. & R., Section 3641, and 3639 ; Cobbey on Rep., Sec. 2.

The plaintiff had bought at execution sale, subsequent to the date of the alleged deed from Sugg to Whitehead, and the sheriff had conveyed to him by virtue thereof the interest of Whitehead in the same land described in the Sugg deed and mortgage.    The first cause of action, upon the face of the complaint, appears to have been brought solely to regain possession of the specific deeds mentioned, and damages for detention.

The general rule is that replevin, or this provisional remedy which serves the purpose of a substitute both for replevin and detinue, will lie for the recovery either of deeds or certificates of stock, where the object is to regain possession of the specific paper, and not to test the right to the property which it represents.    But neither the com-mon law action nor the provisional remedy of claim and delivery can be maintained for the unlawful taking or the wrongful detention of a title deed, where there is a dispute about its delivery, and the controversy involves the deter-mination of the title to the land conveyed by it.    Cobbey, *supra*, Sec. 79 ; 7 Lawson, *supra*, Sec. 3643 ; *Flannigan v. Coggin*, 71 Wis., 28.

In his second cause of action, the plaintiff alleges that he is the owner and entitled to the possession of the deeds,

and that the defendants wrongfully converted them to their own use. Trover and conversion at common law was an action on the case, brought to recover damages for the wrongful taking of personal chattels from the owner or one having right to possession of them, and the wrongful conversion of them to the use of the latter. The use of the word " conversion " where the object is to acquire possession of particular property, and the judgment demanded and rendered is for its recovery with damage for detention, does not change the character of the action. It is not necessary therefore to determine whether upon the facts an action for trover and conversion, or in the nature of it, could have been maintained, or whether the reason which precludes a recovery, when the action is brought for the specific chattel, would not apply when under the guise of seeking damage for the wrongful conversion of a deed, it is apparent that the object is to estop a party from setting up a title to the land conveyed by it, by a finding that it had not been delivered to him. *Martin* v. *Thompson*, 162 Cal., 618—45 Am. Rep., 663.

The plaintiff cannot maintain this action. Before the enactment of the late statute (Laws 1893, Ch. 6) he might have tried the title by an action against a trespasser in possession, but now under its provisions he may also sue a claimant who is not an occupant, and force him to disclaim or defend his title. Had either remedy been resorted to, the court during the pendency of the action would have had the power to order the production, and, if deemed necessary, the deposit with the clerk in the custody of the court of all the papers mentioned in the pleadings, and in passing upon the issues involved the conflicting testimony offered in this case, or so much of it as would have been relevant, might have been heard. It is unnecessary to pass upon the exceptions to the competency of evidence,

when, in no aspect of it, either including or excluding the testimony objected to, would the plaintiff be entitled to recover.

The judgment below is reversed. Let this opinion be certified to the end that judgment may be entered accordingly.

Reversed.